NOT FOR PUBLICATION                                [Dkt. Ent. 12]

```
            IN THE UNITED STATES DISTRICT COURT
              FOR THE DISTRICT OF NEW JERSEY
                      CAMDEN VICINAGE
```

DR. EDWARD A. RAB,

        Plaintiff,

                              Civil No. 08-2413 (RMB/KMW)

   v.

BOROUGH OF LAUREL SPRINGS, et       **OPINION**
al.,

        Defendants.

Appearances:

Thomas A. Shovlin, Esq.
Riley & Shovlin, PA
1405 Chews Landing Road, Suite 7
Laurel Springs, NJ 08021

    Attorney for Plaintiff

Michael O. Kassak, Esq.
White & Williams, Esqs.
457 Haddonfield Road, Suite 400
Cherry Hill, NJ 08002-2220

    Attorney for Defendants.

**BUMB**, UNITED STATES DISTRICT JUDGE:

    This matter comes before the Court upon a motion for summary judgment by defendants Borough of Laurel Springs, Timothy W. Chalfant, and Michael Walcott (the "Defendants"). In this civil rights action, plaintiff Edward Rabb (the "Plaintiff") has brought claims for unlawful seizure and excessive force pursuant

to 42 U.S.C. § 1983, as well as for common-law torts pursuant to the New Jersey Tort Claims Act, N.J. Stat. Ann. § 59:1-1 et seq. Plaintiff alleges that Defendant Chalfont, a Laurel Springs police officer, threw him to the ground, kicked him, pulled him to his feet, struck him in the face, and ultimately arrested him, all because Plaintiff, after nearly being struck by Defendant Chalfont's police car, had shouted, "[Y]ou crazy bastard, put on your lights.  You are going to kill somebody." (Pl.'s Ctr.-Stat. Mat. Fcts. ¶ 7.)  Plaintiff further alleges that Defendant Walcott, as police chief, and Defendant Borough of Laurel Springs contributed to causing the incident by failing to properly train, supervise, and issue clear police policies.[1]  Defendants now move for summary judgment on various grounds.  The motion will be granted-in-part and denied-in-part, and this case will be set down for trial.

## LEGAL STANDARD

Summary judgment shall be granted if there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law.  Fed. R. Civ. P. 56(c); Hersh v. Allen Products Co., 789 F.2d 230, 232 (3d Cir. 1986).  A dispute is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the non-moving party."  See Anderson

---

[1] Because the Court writes primarily for the benefit of the parties, it need not describe the underlying facts in detail.

v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  "At the summary judgment stage the judge's function is not . . . to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial."  Id. at 249.  "In making this determination, a court must make all reasonable inferences in favor of the non-movant."  Oscar Mayer Corp. v. Mincing Trading Corp., 744 F. Supp. 79, 81 (D.N.J. 1990) (citing Meyer v. Riegel Products Corp., 720 F.2d 303, 307 n.2 (3d Cir. 1983)).  However, "the party opposing summary judgment 'may not rest upon the mere allegations or denials of the . . . pleading'; its response, 'by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial.'"  Saldana v. Kmart Corp., 260 F.3d 228, 232 (3d Cir. 2001) (quoting Fed. R. Civ. P. 56(e)).

## DISCUSSION

### A.  Unlawful Seizure Claim

#### 1.  Heck Procedural Bar

Defendants first argue that Plaintiff is procedurally barred from bringing a claim for unlawful seizure because he has pled guilty to a municipal disorderly persons offense as a result of his encounter with Defendant Chalfont.  Because a finding that Plaintiff was stopped, detained, and arrested without probable cause is necessary for Plaintiff to prevail on the unlawful seizure claim, Defendants contend, the claim impermissibly

3

implies that the municipal court judgment is invalid.

In Heck v. Humphrey, the Supreme Court barred the use of § 1983 as a mechanism to collaterally attack a conviction. 512 U.S. 477, 481-89 (1994). However, "[s]ection 1983 claims for false arrest and false imprisonment do not necessarily implicate ongoing state criminal proceedings, because a court may vindicate a plaintiff's allegation that he was arrested and held without probable cause without impugning an ultimate conviction." Edwards v. New Jersey, No. 08-5617, 2009 WL 3261951, *4 (D.N.J. Oct. 7, 2009) (citing Wallace v. Kato, 549 U.S. 384, 393-94 (2007)). Here, Plaintiff pled guilty to a violation of Lindenwold Ordinance 163-13, which provides:

> Any person who shall be apprehended . . . within the limits of the borough, who cannot give good account of himself . . . , or who is engaged in an illegal occupation or who is in the borough for an unlawful purpose, shall be deemed and adjudged to be a disorderly person . . . .

(Pl.'s Ex. H [Dkt. Ent. 14].) In other words, Plaintiff pled guilty to being present within the municipality either (a) for an unlawful purpose, (b) without reason, or (c) while engaging in an illegal occupation. Characterizing the violation as "loitering", Defendants maintain that "it was plaintiff's violation of the loitering ordinance that provided [Defendant] Chalfant with a reasonable basis to stop and investigate [Plaintiff]." (Def.s' Repl. Br. 4.) This, however, is a disputed conclusion of fact. Plaintiff avers that he was stopped because he had yelled at

4

Defendant Chalfant for driving recklessly.  It is entirely possible that Plaintiff was stopped without probable cause (if in fact he was stopped for engaging in the perfectly legal act of criticizing a police officer's driving) <u>and</u> that he was present within the municipality for an unlawful purpose (or for no purpose at all), in violation of the municipal ordinance.  Therefore, it is for a jury to determine at trial why Defendant Chalfont stopped Plaintiff.  Because Plaintiff's unlawful seizure claim does not necessarily impugn his municipal conviction, the Court cannot bar this claim from proceeding at this time.

### 2. **Legal Basis for the Stop of Plaintiff**

Defendants next argue that Plaintiff's unlawful seizure claim must fail as a matter of law, because Defendant Chalfont had reasonable suspicion to stop Plaintiff.  Again here, Defendants' argument begins from the faulty premise that their account of the facts should be taken as true.

"A police officer may conduct an investigatory stop of someone if the officer possesses a reasonable suspicion -- based on 'specific and articulable facts and . . . rational inferences [drawn] from those facts' -- that the person is involved in criminal activity."  <u>United States v. Goode</u>, 309 F. App'x 651, *2 (3d Cir. 2009) (quoting <u>Terry v. Ohio</u>, 392 U.S. 1, 21 (1968)).  The Supreme Court has explained:

> Reasonable suspicion is a less demanding standard than
> probable cause not only in the sense that reasonable

5

> suspicion can be established with information that is different in quantity or content than that required to establish probable cause, but also in the sense that reasonable suspicion can arise from information that is less reliable than that required to show probable cause.

Alabama v. White, 496 U.S. 325, 330 (1990).

Plaintiff avers that he was nearly struck by Defendant Chalfont's speeding police car while crossing the street lawfully, and was stopped by Defendant Chalfont for doing nothing more than shouting, "[Y]ou crazy bastard, put on your lights. You are going to kill somebody." (Pl.'s Ctr.-Stat. Mat. Fcts. ¶ 7.) Since criticizing a police officer's driving ability, even in an elevated voice, does not give rise to reasonable suspicion of a crime, Defendant Chalfont's stop of Plaintiff was unlawful on Plaintiff's account of the facts. See Kerman v. City of New York, 261 F.3d 229, 242 (2d Cir. 2001) (identifying a "right to criticize the police without reprisal") (citing Houston v. Hill, 482 U.S. 451, 461 (1987)); Finney v. Metzger, 175 F. Supp. 2d 1296, 1304 (D. Kan. 2001) ("[P]olice officer[s] [may not] arrest or detain someone merely for being obnoxious or uncooperative.").

Of course, Defendants paint a starkly different factual picture. They aver that Plaintiff stepped in front of Defendant Chalfont's moving police car and then staggered into an adjacent parking lot. If Defendant Chalfont in fact observed Plaintiff staggering in the street without regard for oncoming traffic, this would certainly give rise to reasonable suspicion that

Plaintiff was intoxicated or otherwise impaired.  Plaintiff suggests, however, that Defendant Chalfont made no such observation, but rather concocted this account to explain his conduct after-the-fact.

Courts may resolve a fact dispute on summary judgment only if no reasonable jury would accept a non-movant's account.  <u>See</u> <u>Matsushita Elec. Industrial Co. v. Zenith Radio Corp.</u>, 475 U.S. 574, 586-587 (1986) ("Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'"); <u>Franulovic v. Coca-Cola Co.</u>, No. 07-0539, 2009 WL 1025541, *6 (D.N.J. April 16, 2009) (holding that mere "conjecture and speculation" are insufficient to establish a genuine issue of material fact).  Here, ample evidence corroborates Plaintiff's account:  In addition to Plaintiff's own testimony, witness Linda Ruiz has testified to observing the police cars speeding, (Ruiz Dep., July 30, 2009, 34:11-35:4 [Pl's Ex. L]), and the "Use of Force Report" completed by Defendant Chalfont -- a form with prescribed categories -- notably refrained from describing the "Type of Incident" as a "Crime in Progress" or a "Suspicious Person", and from identifying Plaintiff as being "Under the Influence", (Use of Force Report [Pl.'s Ex. C]).  The Court therefore may not engage in a weighing of the evidence here.  Genuine issues of material fact will preclude summary judgment on the ground that Defendant

Chalfont had reasonable suspicion to justify his seizure of Plaintiff.

    **B.**    **Excessive Force Claim**

        **1.**    **Objective Reasonableness of the Use of Force**

Likewise, genuine issues of material fact will preclude summary judgment on Plaintiff's excessive force claim. To determine whether force used on a suspect is excessive, district courts must consider whether the force used was objectively reasonable under the circumstances. Graham v. Connor, 490 U.S. 386, 397 (1989). In conducting this inquiry, courts must consider such factors as: the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, whether the suspect is actively resisting arrest or attempting to evade arrest by flight, the possibility that the suspect is violent or dangerous, the duration of the action, whether the action takes place during the course of an arrest, the possibility that the individual is armed, and the number of persons that police must control at one time. Gulley v. Elizabeth City Police Dept., No. 04-4445, 2006 WL 3694588, *5 (D.N.J. Dec. 13, 2006) (citing, inter alia, Rivas v. Passaic, 365 F.3d 181, 198 (3d Cir. 2004)), aff'd No. 06-5150, 2009 WL 2219266 (3d Cir. July 27, 2009). Notably, "[n]ot every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers . . . violates the Fourth Amendment." Graham, 490 U.S.

8

at 396 (internal quotation omitted).

Here, taking Plaintiff's account of the incident as true, the only factor weighing in favor of Defendant Chalfont's use of heightened force is Plaintiff's refusal to submit to handcuffing. (Rab Dep., Nov. 24, 2008, 24:12-25:3 [Def.s' Ex. B].) The crime at issue was not severe, there was no immediate threat (other than spilled coffee) to Defendant Chalfont, Plaintiff did not attempt to flee, he was neither violent nor armed, and no other persons needed to be controlled at the time. Nonetheless, according to Plaintiff, Defendant Chalfont threw the elderly suspect to the ground, kicked him, dragged him, pulled him to his feet, and struck him in the face. (Pl.'s Ctr.-Stat. Mat. Fcts. ¶¶ 47-52.) Even if Plaintiff's refusal to submit to handcuffing justified some use of force, the amount of force alleged to have been used is clearly excessive under the circumstances. Compare Nelson v. Jashurek, 109 F.3d 142, 145 (3d Cir. 1997) ("[T]he fact that [an officer] was justified in using 'substantial force' to arrest [a suspect] does not mean that he was justified in using an excessive amount of force and thus does not mean that his actions in effectuating the arrest necessarily were objectively reasonable."). Accordingly, summary judgment will not be granted on the ground that Defendant Chalfont's use of force was

9

objectively reasonable.[2]

### 2. **Qualified Immunity**

Defendants further argue that even if the use of force alleged was excessive, Defendant Chalfont is qualifiedly immune from suit here.[3] Qualified immunity shields officials from suit when their conduct is objectively reasonable. See Pearson v. Callahan, 129 S. Ct. 808, 815 (2009). The doctrine operates "to ensure that before they are subjected to suit, officers are on notice that their conduct is unlawful." Hope v. Pelzer, 536 U.S. 730, 740 (2002). Thus, qualified immunity protects officials when they may have acted upon reasonable errors, whether they be mistakes of law or fact. Pearson, 129 S. Ct. at 815.

Qualified immunity will only shield Defendant Chalfont from suit if: (a) the law governing his conduct was not clearly established, or (b) a reasonable person in his position could

---

[2] Defendants have argued that Plaintiff can establish neither malicious and wanton conduct, nor reckless and callous indifference to Plaintiff's rights, by Defendant Chalfont. See Smith v. Wade, 461 U.S. 30, 56 (1983). The Court disagrees. Taking Plaintiff's account of the facts as true, a reasonable jury could conclude from the extent of Defendant Chalfont's assault on Plaintiff that he was, at least, recklessly and callously indifferent to Plaintiff's rights.
  Of course, the law is well settled that punitive damages are not available against municipalities. City of Newport v. Fact Concerts, Inc., 453 U.S. 247, 271 (1981). Plaintiff concedes this point. (Pl.'s Opp'n Br. 12.) Thus, Plaintiff will not be permitted to pursue punitive damages against Defendant Laurel Springs.

[3] Notably, Defendants assert qualified immunity only for the excessive force claim, not the unlawful seizure claim.

have perceived the facts to be such that the use of force alleged would be justified. Brandt v. Monte, 626 F. Supp. 2d 469, 478-81 (D.N.J. 2009). Importantly, when making these objective determinations at the summary judgment stage, the Court still takes as true Plaintiff's well supported allegations. See Giles v. Kearney, 571 F.3d 318, 326 (3d Cir. 2009) ("The District Court was required to view the facts in the light most favorable to the plaintiff."); Halpin v. Camden, 310 F. App'x 532, 534 n.1 (3d Cir. 2009) (finding error when a district court did not credit a plaintiff's version of the facts in its qualified immunity analysis).

First, the law governing Defendant Chalfont's conduct was clearly established at the time of the incident. When Defendant Chalfont engaged Plaintiff, he was presented with a textbook police stop. There were no peculiar circumstances creating doubt about the legal limits of his use of force. Throwing a non-violent, elderly man to the ground, kicking him, and hitting him in the face is clearly excessive, even when he has "tr[ied] to wiggle away," (Rab Dep., Nov. 24, 2008, 25:1-9 [Def.s' Ex. B]), to evade handcuffing. See Gulley v. Elizabeth City Police Dept., No. 06-5150, 2009 WL 2219266 (3d Cir. July 27, 2009); Jackson v. Tinicum Twp., No. 05-3854, 2007 WL 838988, *5 (E.D. Pa. Mar. 15,

11

2007), aff'd 310 F. App'x 510 (3d Cir. Feb. 10, 2009).[4]

Second, the circumstances according to Plaintiff would not have given rise to a reasonable, but mistaken, perception of the facts justifying Defendant Chalfont's alleged use of force. The circumstances would not have suggested to a reasonable officer that Plaintiff was violent, armed, or attempting to flee. Compare Curley v. Klem, 499 F.3d 199, 215-16 (3d Cir. 2007) (finding that reasonably misperceived facts justified a constitutional violation). Thus, no reasonable mistake of fact could have justified the use of force attributed to Defendant Chalfont. Accordingly, qualified immunity will not shield

---

[4] Defendants cite a number of cases for the misleading proposition that qualified immunity is available if reasonable officers may disagree on the propriety of the use of force. (Def.s' Br. 18-19 (citing Archer v. Melchionda, No. 06-2306, 2008 WL 205220, at *8 (D.N.J. Jan. 23, 2007); Green v. N.J. State Police, No. 06-4111, 2007 WL 2453580, *3 (3d Cir. Aug. 29, 2007); Tofano v. Reidel, 61 F. Supp. 2d 289, 304 (D.N.J. 1999))). Qualified immunity does not turn upon what an average officer thinks may be reasonable. Rather, courts presume that the reasonable officer is familiar with clearly established legal rules. Thus, when the law governing a particular course of conduct is clearly established, the reasonable officer, ipso facto, will not err in determining the law's requirements. See Walczyk v. Rio, 496 F.3d 139, 166-69 (2d Cir. 2007) (Sotomayor, concurring) ("[W]hether a right is clearly established is the same question as whether a reasonable officer would have known that the conduct in question was unlawful."). In other words, there is no "room for disagreement" about what the law requires when the law is clearly established. See Halpin v. Gibson, No. 05-2088, 2009 WL 3271590, *3 (D.N.J. Oct. 9, 2009) ("Defendant's argument that he had a mistaken view of what is prohibited by the [law] cannot save him [when the law is clearly established].").

Defendant Chalfont at this summary judgment stage.[5]

### C. Section 1983 Claims Against Co-Defendants Walcott and Laurel Springs

Defendants next argue that the evidence against the named co-defendants -- Defendant Walcott, the police chief, and Defendant Laurel Springs, the municipality -- does not satisfy the requirements of § 1983. Section 1983 liability cannot be established upon a theory of respondeat superior. Jimenez v. New Jersey, 245 F. Supp. 2d 584, 586 (D.N.J. 2003) (quoting Polk County v. Dodson, 454 U.S. 312, 325 (1981)). Thus, a § 1983 claim against a supervisor will lie only if he or she directly participated in the constitutional violation, Rode v. Dellarciprete, 845 F.2d 1195, 1207 (3d Cir. 1988), and a § 1983 claim against a municipality will lie only if it brought about the violation with a "policy or custom," Berg v. County of Allegheny, 219 F.3d 261, 275 (3d Cir. 2000) (citation omitted).

Here, Plaintiff argues that Defendants Walcott and Laurel Springs bear liability for the alleged violation because they systematically failed to train police officers like Defendant Chalfont. "Where . . . the policy in question concerns a failure to train . . . municipal employees, liability under section 1983

---

[5] Once the facts are borne out at trial, qualified immunity may still be available in light of the jury's findings of fact. See, e.g., Halpin, 2009 WL 3271590, *2-3 (considering a post-trial motion for qualified immunity).

requires a showing that the failure amounts to 'deliberate indifference' to the rights of persons with whom those employees will come into contact." Carter v. City of Philadelphia, 181 F.3d 339, 357 (3d Cir. 1999) (quoting City of Canton v. Harris, 489 U.S. 378, 388 (1989)). "In order for a municipality's failure to train . . . to amount to deliberate indifference, it must be shown that (1) municipal policymakers know that employees will confront a particular situation; (2) the situation involves a difficult choice or a history of employees mishandling; and (3) the wrong choice by an employee will frequently cause deprivation of constitutional rights." Id. (citing Walker v. City of New York, 974 F.2d 293, 297-98 (2d Cir. 1992)).

Plaintiff has proffered the following evidence to support a finding of inadequate training:

> Laurel Springs [police] officers received forty-five minutes of training in use of force twice a year. After [D]efendant Walcott reads the Attorney General's guidelines to his officers, he gives them a written test. The officers have been given the same test for several years. The questions never change. Defendant Chalfont could not even recall taking any tests. Furthermore, Laurel Springs Police Department does not have a formal standard operating procedure for use of force.
>
> Plaintiff's expert, Richard Jankowski, reviewed the department's training program and concluded that it was deficient in several respects. Furthermore, he determined that the department is not complying with the Attorney General's Internal Affairs Policy and Procedures because the department does not have its own written SOP for use of force.

(Pl.'s Opp'n Br. 10.) These facts, taken as true, are sufficient

at least to create a genuine issue of material fact as to whether the municipality exhibited deliberate indifference in failing to train its officers as to the proper use of force. See Natale v. Camden County Correctional Facility, 318 F.3d 575, 585 (3d Cir. 2003) (holding that evidence of failure to establish a police can create a jury question of deliberate indifference). Certainly, the situation confronted by Defendant Chalfont -- a disrespectful suspect who resists handcuffing -- is a common event for police officers. See Houston v. Hill, 482 U.S. 451, 462 (1987) (commenting that police officers are expected to "exercise a high[] degree of restraint" in response to offensive or threatening language). Furthermore, the Attorney General's Internal Affairs Policy and Procedures, as well as the New Jersey Legislature, have put the municipality and its decisionmakers on notice that gauging the appropriate use of force creates a common difficulty for police officers. See N.J. Stat. Ann. § 40A:14-181 ("Every law enforcement agency shall adopt and implement guidelines which shall be consistent with the guidelines governing the "Internal Affairs Policy and Procedures" of the Police Management Manual . . . ."). Finally, using excessive force is a frequent constitutional deprivation. Accordingly, Plaintiff has proffered sufficient evidence to create a jury question as to whether Defendant Laurel Springs exhibited

deliberate indifference in failing to train its officers.[6]

To establish a claim against Defendant Walcott, the police chief, Plaintiff must show that he "had personal involvement in the allegedly deficient training." Bangura v. City of Philadelphia, No. 08-2742, 2009 WL 2252877, *4 (3d Cir. July 29, 2009) (citing Rode v. Dellarciprete, 845 F.2d 1195, 1207 (3d Cir. 1988)). This is an easy task, since Defendant Walcott, as police chief, has a primary role in determining and carrying out training procedures. (Walcott Dep., June 30, 2009, 24:1-22 [Pl.'s Ex. A].) The Court therefore declines to grant summary judgment as to claims against Defendants Walcott and Laurel Springs.[7]

D. **State-Law Claims**

Defendants next argue that Plaintiff's state-law tort claims do not satisfy New Jersey's "verbal threshold", a doctrine providing generally that plaintiffs cannot recover for pain and

---

[6] Notably, however, Plaintiff has proffered no evidence that Defendants Laurel Springs and Walcott improperly trained their officers about protocol for seizures/arrests. Thus, summary judgment will be granted on the narrow basis that these defendants may be held liable only for their involvement in the excessive use of force.

[7] Defendants also argue that Plaintiff has not established a causal connection between inadequate training and Defendant Chalfont's excessive use of force. Certainly, a reasonably jury could conclude that Defendant Chalfont used excessive force because he had not been trained in the constitutional limits on an officer's exercise of force. Thus, the Court will leave this matter to be resolved by the factfinder at trial.

suffering unless they have experienced a permanent physical injury. See N.J. Stat. Ann. § 59:9-2(d). Under this doctrine, recovery is barred when a plaintiff offers only evidence of minor incidents or that is subjective in nature. See Collins v. Union County Jail, 150 N.J. 407, 413, 696 A.2d 625 (1997). Defendants argue that Plaintiff cannot recover in tort, because he experienced no permanent physical injury.

The New Jersey Supreme Court has carved out an exception to the verbal threshold, however, which may permit Plaintiff's recovery against Defendant Chalfont. When a public employee's actions constitute willful misconduct, the plaintiff need not establish a permanent injury. Toto v. Ensuar, 196 N.J. 134, 137-38, 952 A.2d 463 (2008). Willful misconduct occurs when there is a deliberate act or omission with a high degree of probability of harm and reckless indifference to the consequences. Leang v. Jersey City Board of Education, 399 N.J. Super. 329, 366, 944 A.2d 675 (2008), aff'd in part 198 N.J. 557 (2009). Here, there is certainly enough evidence of willful misconduct to present a question of fact to be decided at trial.[8] Accordingly, summary judgment will be denied on this basis as to Defendant Chalfont.

---

[8] Plaintiff further argues that the verbal threshold does not apply when an official is acting outside the scope of his employment. The Court need not explore here whether Defendant Chalfont's conduct was within the scope of his employment, because the genuine question as to whether his misconduct was willful will preclude summary judgment.

The tort liability of Defendants Walcott and Laurel Springs presents a more difficult question, however, because there is no evidence of willful misconduct by these parties. Plaintiff argues, however, that his psychological injury satisfies the verbal threshold. Indeed, Plaintiff's medical expert, Dr. Edward H. Tobe, has opined that "[Plaintiff] will have permanent psychiatric sequelae from this assault. . . . [He will experience] chronic anxiety especially and to some extent depression . . . [as a result of] this tragic incident." (Tobe Report, at 3 [Pl.'s Ex. N].) The Court must therefore decide if such psychological injury satisfies the verbal threshold.

In Collins, the New Jersey Supreme Court held that permanent psychological injuries can satisfy the verbal threshold. 150 N.J. at 420. There, an inmate sustained post-traumatic stress disorder as a result of having been forcibly fondled and sodomized by a corrections officer, which the Court characterized as an "aggravating and intrusive assault." Id. Defendants distinguish this case by arguing that the assault here was not nearly as harsh. Defendants analogize this case instead to Hammer v. Township of Livingston, in which the Court held that permanent psychological injuries resulting from a automobile accident did not satisfy the verbal threshold. 318 N.J. Super. 298, 306-07, 723 A.2d 988 (1999). There, the permanent psychological injuries, according to the plaintiff's doctor, were

18

"a mild level of anxiety and depression . . . ," which did not "prevent[] . . . her . . . from carrying out her ordinary day-to-day functions or . . . live a normal life."  Id. at 307. Importantly, Hammer distinguished Collins by both the severity of the psychological injury suffered and the harshness of the assault itself.  See id. at 307 ("We need not determine whether this case presents 'sufficiently aggravated' circumstances to entitle plaintiff to recover pain-and-suffering damages for her psychological disorder because we conclude that plaintiff failed to produce prima facie proof that her psychological disorder was substantial.").

Here, the Court lacks a sufficient basis to conclude either that Defendant Chalfont's assault on Plaintiff was not "aggravated", or that Plaintiff's psychological disorder was not "substantial".  Plaintiff, an elderly man, avers that he was thrown to the ground, kicked, and hit, suffering serious (although not permanent) physical injuries as a result.  If in fact Defendant Chalfont perpetrated a vicious assault on Plaintiff as retribution for his criticism of Defenant Chalfont's driving, a jury could reasonably find that this constitutes sufficiently "aggravated" circumstances to satisfy the verbal threshold.  Furthermore, making all inferences from Dr. Tobe's report in Plaintiff's favor, a jury could reasonably find that the psychological disorder being suffered by Plaintiff is

sufficiently "substantial" to establish a permanent injury. The Court hastens to note, however, that cross-examination of Dr. Tobe may reveal that Plaintiff's psychological injury is indeed more akin to the "mild" condition experienced by the Hammer plaintiff -- a determination that cannot be made by the Court on Dr. Tobe's report alone. Accordingly, the Court will deny summary judgment on the state-law tort claims.

## CONCLUSION

For the reasons stated herein, Defendants' motion for summary judgment will be granted only as to Plaintiff's § 1983 claims for unlawful seizure against Defendants Walcott and Laurel Springs, and for punitive damages against Defendant Laurel Springs; summary judgment will be denied as to all other claims. An accompanying Order will issue herewith.

s/Renée Marie Bumb
RENÉE MARIE BUMB
UNITED STATES DISTRICT JUDGE

Dated: December 18, 2009